First case is 519-0337 Developmental Disability Services of Metro East v. Illinois Dept. of Human Services Mr. Kennedy Thank you, may it please the court, my name is Tom Kennedy I represent DDS of Metro East and DDS is an independent service coordination agency and what that means is they provide essentially what I would describe as social work services to adults with intellectual and developmental disabilities in St. Clair and Madison County Some of the things they do are kind of a clerical nature they keep track of the contact information for people and so forth Some of it is a little more sophisticated, that is they certify people to be eligible for services from the Department of Mental Health Some of the stuff is pretty darn sophisticated They go to jails or hospitals or shelters to find people with intellectual and developmental disabilities help them get out of those difficult situations, try to find places for them to go try to get funding for them from the department That's what they do and that's what they've done for some 32 years There are some things about this case that are pretty important that we don't know The state implemented a new process for selecting providers to provide independent service coordination services called the NOFO, we refer to it as the ISC NOFO They proposed this and started in 2016 and implemented it in 2018 What we don't know is why they did it They've never said why we're doing it, why it's necessary, why it's needed what benefit it's going to be for consumers or for the state or for anybody They've never said it's going to save them money They've never said it's better for any purpose than we know of As far as I know, there's no record of any significant problems with the ISC service delivery system in Illinois The second thing is, they've done some other things that we've discovered related to the NOFO, which are kind of important For example, we learned just the other day that they withdrew funding for an agency called Southern Illinois Case Coordination Services of $500,000 They said, case coordination that you're providing, we're going to take $500,000 from you we're going to give it to somebody else, we're not going to tell you why What this means is that agency, which is located in this county has the same number of clients and ten less employees to serve those people The third thing they did that we don't know is they created a so-called fee-for-service reimbursement system for the major part of the services that these agencies provide which is called Individual Service and Support Advocacy, or ISSA Those are the sophisticated things that these employees do They advocate for people, they go to their homes, they go to these shelters, they go to wherever they need to go and they help folks The state has now decided that rather than contract with agencies for a fixed fee for these services they're going to pay them on a fee-for-service basis and I can't find anything that says how they're going to do that It looks to me like that's a change in the Medicaid reimbursement rate If it is a change in the Medicaid reimbursement rate, they have to give notice, they haven't, and so forth So those are the things that we don't know What we do know is that this so-called NOFO is a rule According to Illinois law, it's an agency statement of general applicability that implements agency policy The state has not said one way or the other State defendants have not said whether NOFO is a rule The state has generally denied that allegation, but I don't know why they denied it It's a major change in the ISC service delivery system in Illinois For the first time in over 30 years, it created a competitive bidding system to see who's going to get the NOFO, who's going to provide these Medicaid services Previously it had contracted with agencies across the state to do that The state indicated that it wanted to reduce the number of agencies from the existing number which I think is 17,000, fewer than one, to a maximum of 12 They didn't say why, because that's what they wanted to do They plan to allow applicants in this NOFO process to be for-profit entities I believe that they excluded insurance companies and managed care agencies, although I could be wrong But the point is that for-profits now can bid on these contracts And once again, as I said, I think they changed the way that ISSA services, which is about 60% of their services or more, are going to be reimbursed because they're going to be fee-for-service It is uncontested that there was no public notice of this process, this NOFO process There was no notice and comment period, and there was no referral to JCO The status of this case is pretty unusual, at least in my humble opinion We filed a lawsuit in February of 2019 alleging all these things And that complaint was refused to be filed by the clerk of the circuit court of St. Clair County It went in electronically in a filing envelope and it sat there forever It was not accepted We finally got a call from the clerk saying we're not going to file this You have to file two cases You have to seek administrative review in one case You have to seek injunctive relief in another case That's the way it's going to be That's the first time this happened to me in my career, which exceeds 40 years And I don't understand it I don't either, but the administrative review is also in the county court? Yes, same judge, same everything, same defendant, same Exactly the same defendants, same court, same judge, same everything But what's on review today is the denial of the TRO and In the CH case, in the Chancery case Correct, and the injunctive relief But the arguments and the decision of the trial court are essentially the same So I'm going to refer to the MR decision Even though it's not the decision in the trial court in this case You can see what the judge is thinking from looking at the judge's similar decision in the MR case Essentially what, so we were told we can only do it that way Is that Judge Katz? That's Judge Katz We disregarded the clerk's order And so we filed in count two of the plaintiff's complaint In this case, we alleged a violation of the Illinois EPA And we disregarded the clerk's order with respect to arguing the case The first thing we argued was the violation of the EPA And we continued to argue it, and you can see from looking at the record Particularly at page 58 and thereafter The first claim that the plaintiff made in the CH case Was that the NOFO essentially adopts what they call a merit-based bidding process For a Medicaid-funded program And under Illinois law, that's not supposed to happen Medicaid programs are not supposed to be subject to competitive bidding That's Illinois law, and that's what's called the uniform guidance That's federal law, and that's found in 2 CFR section 200.101E1V as in Victor So, there's no case law that interprets that federal law I have not found anything in writing that explains why that's true I would speculate that it's true because the Medicaid programs have a state plan That state plan is subject to notice and comment and publication and approval by the federal government And so forth, and rather than duplicate that whole process in a notice and comment period In Illinois, they just said, you don't have to do it, it's exempt, don't do it So, if it's exempt, it shouldn't have been part of the NOFO It was, so we say that's wrong, that we shouldn't have been forced to participate in that bidding process The second thing we say about that is that The rationale for the final decision of the agency in this case is totally unclear It simply says, I agree with the decision of the other people in this case This court ruled in a case called Violette I don't know how to pronounce it And if you look at the Violette decision, and you see what this court held That decision, Violette, was a heck of a lot longer and more thoroughly explained than this decision This is a one sentence decision And we think that violates the Illinois Grant Accountability and Transparency Act And the regulations there under 44 Illinois Administrative Code section 7000.350G6C as in Carl Mr. Kennedy Yes A lot of what you're arguing is the propriety of whether or not these regulations could be Invoked or used to interfere with your contract But I thought this appeal is more limited in scope to the denial of the TRO and injunctive relief Yes, Your Honor. And the court found that we were not entitled to a TRO or for injunctive relief Because we didn't have a clearly ascertained right That was the language the court used Okay. Here's my question, though Let's suppose you do have an ascertainable right to at least bring the action As it relates to a preliminary injunction or a TRO What is the irreparable harm to your agency if these were not to be granted? These two exist. It will no longer be allowed to be a Medicaid provider And why is that? Because the only providers who can serve these clients are those which are selected through the NOFO process To be an independent service coordination agency So they will have no clients and they will get no money Your client would basically go out of existence That's what's pleaded for But your client was annually signing a contract, right? Yes, provider agreement I'm sorry. And the contract had in it, at least the one that's in the record, a paragraph that says the effective date of the contract That is, it was a term contract Yes, that's a one-year contract Each year for the last 32 years has been a one-year contract Right. So my question is, in light of the fact that it was a term contract Are you arguing that your client had some kind of expectation of continuing the contract? Yes, just like that How can you do that if it's a term contract? I can do it because the Supreme Court decision in Treynor is just like this one, this situation Can you tell me why? In Treynor, they were talking about a lab that performed services for Medicaid At the court, that case was a direct appeal So there's not a record about what happened in the appellate court, which I wish there was But I can't see anything in that decision which suggests that that lab had anything other than one-year contracts My experience with state agencies and with provider agreements is that they're all one-year contracts If you research the question of provider agreements under Illinois law, state or federal For Medicaid provider agreements, I can't find anything that says they're other than one-year agreements They go from year to year You have to be certified, you have to be qualified You have to agree to accept the rate of pay that the government gives You have to agree not to charge consumers one nickel more than what the government is willing to pay You have to agree to audits both by the state and by the feds if they so wish You have to give consumers choice You have to agree to all kinds of non-discrimination things But if the state of Illinois comes along and imposes a competitive bidding process And someone comes along and can bid a better deal, if you will, than you're not-for-profit Why can't the state do that? I suppose the state could do it if the process was a legal process That is, if the process was- First off, they've got to get approval from the Center for Medicare and Medicaid Services, which they didn't do That is, to change their state plan, to change the way that they provide services They've got to get approval from the feds When you say they, you mean the state? The state defense They didn't So they adopted this thing without getting approval from CMS I think that they've changed the reimbursement rate for the majority of the services, which are so-called TISA services And they have reduced the number for reasons which I don't know And they've adopted this bidding process without adopting any rules at all Even though JCAR told them to do it, they didn't do it And I don't know why- JCAR told them to create rules JCAR told the governor's representative, adopt rules to implement GATT They didn't To implement, I'm sorry The Grant Apparency and Transparency Act, or GATT Act Okay, and JCAR, just for the record, is- The Joint Commission on Administrative Rules And that's cited in the argument that I made to Judge Katz That citation, as to where that happened So- Going back to this, kind of the four steps when we get to a preliminary injunction, or TRO Like, you know, successful merits, irreparable harm, that- Right Oh, four things Are you saying that there would be no remedy because your client would be out of business? Yes Well, the state doesn't guarantee your client business That's correct And it's possi- If they did- In other words, if they had approval from CMS to do a bidding process Even though that process contravenes federal law But if they got approval You know, we'll go through the bidding process, we'll do it And we'll- But it's got to be a legit process, it's got to be a legit- So you're saying that you have a likelihood of success on the merits Because of the inappropriate or illegal process that occurred I'm saying at least we have a clearly ascertainable right to an injunction Because the ISSA- Because the NOFO process was promulgated without rules So we're being forced to bid on a process that doesn't have rules Where the state law says you're not supposed to have to bid on Medicaid contracts at all But we've got to do it in order to get this agreement with the state So I think the plaintiff is like the plaintiff and trainer In that they are qualified In that they- You know, the plaintiff and trainer may have had a one-year contract I think that they did It may have been year-to-year bid You know, if they did it right, they could bid it annually I think that the plaintiff and trainer was a qualified, certified, enrolled Medicaid provider I think that he or she probably agreed to all of the prerequisites for being a Medicaid provider They agreed not to discriminate, they agreed to allow free choice They agreed to accept payment only at the rate that the state pays So I would say that the plaintiff in this case is like the plaintiff and trainer And is unlike the university professor that's cited in the Polyvan case Or unlike the steel company that's cited in the Lugans case, which is mentioned in Polyvan Or like the licensed plate manufacturer, which is the plaintiff in Polyvan The plaintiff here has a 30-year relationship, a partnership with the state defendants A provider agreement has gone on for 30 years This is a federal state program to serve the poorest people in the state With intellectual and developmental disabilities The state used to do these things by itself Now it partners with others to perform the state function Which is, you know, license plates or being a university professor is not really a state function But serving the neediest people in the state is And the state has entered into Go ahead Are you saying that the for-profit group that was able to get the contract Could not do as good a job as you were doing? I have no idea whether they could or couldn't I think they probably could do, you know, theoretically they could I happen to have fond feelings for Of course, your clients Well, I helped found this agency 30-something years ago So I believe in their mission and I believe in what they do And they were previously recognized as the number one agency in the state So it's not just my belief Well, I'm just wondering, when you talk about the rules So the process by which the evaluations were done Was not done legally in your opinion Correct And so the granting of the contract would thereby be illegal Void Void It can't be invoked by the state for any purpose So anything, you know, that follows the no-vote process is void In our opinion And that is what we unsuccessfully argued to Judge Katz Judge Katz said a couple of things that I wanted to mention to the court before I'm done One is, Judge Katz says that she thinks that this contract, the no-vote Go ahead, with your last sentence Oh, that's okay Okay, you'll have a few minutes Okay, and for the record, there was a motion to supplement Some case law that came in by the state defendants, right? And did you make the order where we granted that and gave Mr. Kennedy 10 days? Everybody's aware of that? Mr. Kennedy? No Okay, good All right, it's my understanding you're going to split your time 10 and 10, Illinois Department of Human Services versus Ferryland Service Corps Okay, is it Schoenberg? Schoenberg, yes Okay, you may proceed I've got a question right out of the box Sure Can you explain the settlement agreement that was entered into? Your Honor, may it please the court? I'm sorry, I don't know what you're talking about No, that's fine You state your name for the court I'm Kaitlin Schoenberg, I represent the state defendants at police Your Honor, I was not involved with the settlement agreement And so I unfortunately can't really speak to what led to it or how it went about being executed As you are aware, though, from the record, Judge Katz ultimately held that the settlement agreement was void or invalid because it did not protect the interests of Prairieland, who had an interest in receiving the contract for Area K, the area at issue in this case I noticed that Judge Katz was quite, how do I say this, she was independently looking out for necessary parties She wouldn't proceed without having Prairie joined as a necessary party That was at her instigation as I understand it from the record I do believe during one of the first hearings before Judge Katz there was discussion about the fact that in January 2019, Prairieland had been notified that it was awarded the contract for Area K and pursuant to the terms of the NOFO that had been issued, that that contract was supposed to begin on January 1, 2019 And so she did inquire about whether or not Prairieland needed to be added as a party. That is correct Your Honor, I would first just like to state that this Court is reviewing the Circuit Court's decision to deny Plaintiff's motion for preliminary injunction And in doing so, the Circuit Court found that Plaintiff had not established one of the threshold requirements for preliminary injunction relief Namely, that there was a clearly ascertainable right in need of protection And based on the Illinois Supreme Court's decision in Pollyvan, we believe that conclusion from the Circuit Court was correct Aside from that threshold matter though, I would just like to note, and as we've referenced in our motion to cite supplemental authority The extraordinary relief that was requested by the Plaintiff here, namely to bar the State from entering into a contract with the agency that had won the bid for Area K and instead direct funding to the Plaintiff That relief becomes even more extreme on appeal now, considering the facts of the case as they are now Namely, Prairieland, since September 8th, 2019, has been providing services to the individuals in Area K And so to reverse the Circuit Court's decision at this juncture would not simply mean barring the State from entering into a contract It would require the State to end its contracts that it had entered into with Prairieland and instead redirect that funding to the Plaintiff What if it is true that the awarding of the contract was not legal? I mean, wouldn't that be the same effect as if Prairieland would be delivering services from the void contract? Well, I would note, First Your Honor, that on page 42 of the record, and I believe it's page 24 of the NOFO itself The NOFO states that it is following the merit-based review process established by the Governor's Office of Management and Budget Award Administration Information So while it is true that at the time the NOFO was issued, the Department itself had not implemented the regulations as provided for in GATA The NOFO specifically stated it was following the rules and regulations that had been implemented by the Governor's Office And so the agency, the Department here when it was implementing the NOFO was still following regulations even though it itself had not implemented them as required by GATA Well, if something is required by GATA, how can it be implemented appropriately just because it's following somebody else's regulations? I guess my problem here is that all seems to be a merit-based argument to me Judge Katz was having for her the denial of a preliminary injunction I mean, clearly a TRO is without notice, so notice was given, so it can't be a TRO, it's got to be a preliminary injunction That's the narrow issue that gives the right to an interlocutory appeal, right? Yes, that's correct, and the Judge Katz when analyzing Plaintiff's motion for preliminary injunctive relief held that it had not met the first requirement to allow it to grant preliminary injunctive relief On page 218 and 225 of the record, Plaintiff specifically stated that its clearly ascertainable right that was in need of protecting was its legally protected property interest in the continuation of state funding Based on Plaintiff's own description of its clearly ascertainable right in need of protection, Judge Katz correctly relied on PolyVent in concluding that there was no clearly ascertainable right in need of protection based on continuation of receiving state funding Again, in that case, the company at issue had received consecutive contracts from the state for three consecutive years Each one of those contracts had a one-year term When that company sought bid to receive a contract for a fourth year, that bid was rejected by the state and then the company argued that it had a property interest in continuing to receive state funding and the Illinois Supreme Court found that where each contract is independent of another one a company's belief that it should continue to receive funding or continue to receive another contract cannot support a property interest in continuing to receive state funding So based on Plaintiff's own description in the trial court of its clearly ascertainable right in need of protection the circuit court correctly concluded that it did not have such a right and denied preliminary junctive relief on that basis I would add that on appeal... Just on that issue, I know that Judge Katz indicates that there was just inadequate evidence of a clearly ascertainable right She doesn't use the term property right Even though they did, I mean, do you think that that was her finding? Given the way that Plaintiff described the interest I believe that it was described as a property interest in continuing to receive state funding I believe that Judge Katz's decision would include the implication that what the Plaintiff alleged it had the property interest in continuing to receive state funding hadn't been established in the record I would note the Plaintiff's argument for exactly what clearly ascertainable right in need of protection seems to have changed a little bit on appeal In its opening brief before this court, there was discussion about property... Sorry, excuse me, not property, but ascertainable right in need of protection as far as the fairness of the bidding process And on page 15 of the opening brief, the fairness of the bidding process does seem to be tied to its claim that it has a due process right To the extent that is the case or that is the allegation that's being made As we pointed out in our brief, that type of claim has been rejected by other courts To the extent Plaintiff was relying on page 16 of its brief on the Keefe-Shea joint venture case To argue an interest in the fairness of the bidding process I believe on page 16 of their brief, they were using that case to explain that it had standing to bring the suit But the Circuit Court here did not find or explain that the Plaintiff did not have standing to bring the suit And in any event, the facts of that case are different from the ones here Are there any cases that deal with the interplay between the state and Medicaid funding and regulations? There is the Senn Park case, Your Honor, which was cited to by both parties In relation to Plaintiff's IEPA claim In that case, there was a provider of some Medicaid services I believe it was a nursing home that had been receiving reimbursements from the state And the state had tried to change the reimbursement amounts and relied on a contract That said the reimbursements would be subject to change based on the state agency But that conflicted, I believe, with the state Medicaid program And so in that case, the Illinois Supreme Court held that the appellate court correctly concluded That that was a rule that needed to be promulgated under the IEPA But it found that that issue was incidental to contracts And as we explained in our brief, contracts are clearly and directly involved in this case In fact, on page 7 of its amended complaint, it alleges that without the contract The agency will have to shut down And so clearly the contract itself is what's clearly and directly at issue Well, I can see that argument But from what I'm understanding from Mr. Kennedy, and you are right, there's been a bit of a shift The whole process by which the contract is granted seems to be at issue now As the basis of the clearly ascertainable right Not as to the merits, I don't want to, that's another day You understand what I'm saying? So clearly ascertainable right is the first prong under injunction Then likelihood of success on the merits, irreparable harm The balance of interest, I believe To the extent that that does present a different question That's what I'm asking you, does it? I believe that it does Again, based on plaintiff's own allegations and assertions in the circuit court About what clearly ascertainable right it was seeking to protect It was described to the circuit court as continued receipt of state funding And based on those allegations and assertions The circuit court analyzed the plaintiff's motion for plenary injunctive relief And denied that motion To the extent that the clearly ascertainable right has changed or shifted That was not presented to the circuit court below And so it would be forfeited or waived for purposes of appeal But based on plaintiff's own description of its clearly ascertainable right below The circuit court probably relied on Polybend In denying their motion for preliminary injunctive relief I see that I'm going into my co-applicant's time If the court has no further questions We would ask that this court affirm the circuit court's decision Thank you Thank you How much did we go over on that? Three minutes I can make seven minutes right now I'm Jack Kiley for the Prairieland The other from Minneapolis, may it please the court A couple of things I would like to touch on initially One is the plaintiff's argument that the plaintiff here Is akin to the plaintiff in the Treanor case Treanor was a 1977 Supreme Court decision That was then interpreted and applied in 1978 by Polybend And the Supreme Court specifically noted on page 298 of that decision That the program in Treanor was a continuing one Not requiring annual competitive bids In direct contrast with the present case Where plaintiff was not a participant in an ongoing, continuous program So we do believe that the plaintiffs were situationally different Your Honor had asked about term contracts We do believe it's clear that there was not a term contract issue At least according to the Polybend case when looking at Treanor As far as the... Do you think the Polybend case dealt with the issue of Whether the competitive bidding process itself was void or fair? No, Your Honor, I don't believe that was... Polybend wasn't necessarily on case in that point I think Polybend merely stands for the proposition that One does not have an expectation of a continued right to contract I think that when the plaintiff, and there has been discussed Has been kind of shifted They're relying more on Keefe Shea for that proposition That the fair bidding issue is one that is now the basis For the clearly ascertainable right Keefe Shea, as I read it, would mean that In that particular case you had a disappointed bidder or a losing bidder Who pointed out that the successful bidder Had not complied with all of the terms of the bidding I think they had to get 15 letters of reference From minority contract holders or something to that extent And only got 14 So the plaintiff and Keefe Shea comes and says Hey look, you awarded this contract They didn't comply with all of the requirements That's distinguishable from this case Because there's no indication that Prairie Band Or any other winning or losing party to this no vote Didn't comply with the terms of the no vote In other words, if there's 100 questions That have to be asked in this application There's no indication that Prairie Land didn't answer all 100 of them Or for that matter that DDS didn't answer all of them It was just that Prairie Land got a higher score So it's not the... I think this argument, if I'm understanding Mr. Kennedy correctly This argument's a little bit different even Because there's this Medicaid issue out there Medicaid is a U.S. governmental program It's adopted by the states And then you have all these regulations That Medicaid, Medicare requires that the states follow And if I'm understanding you correctly The state did not follow those Well, I would disagree with that And this was discussed Go ahead, tell me why Sure, the federal case that we just argued in September This was a main point of discussion In particular with Justice Sykes And that was more of a Medicaid case And what was established there and discussed there And I agreed with the court's, I think, analysis If I was reading them correctly Was that the state... The federal government can tell the state Whether or not they're applying its rules correctly And so far, there's been no indication that I'm aware of That the federal government has come to Illinois And said, you're not applying this correctly This no vote is not in compliance with GATA Which is a federal regulation That's also now been adopted by the states And so there's no indication I'm aware of That the federal government has said You're taking our federal funding And misappropriating it, misusing it, anything like that My understanding is that the state has implemented Certainly this new change Which has left the entire state Shrunking from another number of areas Down to 12 or 13 now So you have a number of ISCs Not unlike DDS Who are now without funding Because the state has gone to fewer areas So by that fact If you have 18 separate service coordination agencies Providing services And then the state goes to 12 I mean, simple math is going to establish That some people are going to lose their funding And I think that's where we get down to The other issue that was brought up When Medicaid issue at the federal court level Had to do with freedom of choice And the panel pointed out That we never really had a choice Because before you had 18 coordination agencies Providing these services Now you have 12 We truly never had an unlimited choice And that's how the Medicaid or Medicare issue Is being interpreted at that particular level As your honor points out Yesterday The motion to cite additional authority Was granted And I'm sure the panel will note That in that particular case It was determined that the issue was moot And the appeal was dismissed And we would ask that this court But in that case One of the parties conceded that Well, it was the plaintiffs And I would point out And Mr. Kennedy is not conceding Well, Mr. Kennedy is not But Mr. Kennedy is an attorney of record for the plaintiffs He did not argue in fairness to him He was not the one giving oral argument From the South Circuit But he is an attorney of record for the ISD plaintiffs Who did make that concession And one of the attorneys of record And Mr. Kennedy has said in this case That that federal case had big implications here And we would agree with that And we think that that guide should be followed He made that argument And made that statement And that's on page, it's on R6 of our particular record Let me ask you a question About the settlement agreement Because it seems to apply to your company Your client How did that get litigated In this order Well, the way that came about, Your Honor Was that There had been a change With the attorney Who was representing the state At the circuit court level And so in the meantime There were these discussions going on Settlement discussions that Myself personally or our client Didn't know were necessarily going Until our client discovered it through A person who Blogs or reports these things online Indicating that the settlement was pending So we ended up back in front of Judge Cass Wait a minute You're already in the lawsuit We were She brought you in Right, that's correct Up until the point she brought you in Were you aware of the lawsuit My client I think became aware of it Around the time we were intervening I was contacted and said We have to answer this complaint on Monday It was a Thursday, I said that's impossible And that was the case So it was because it was not A 30 day settlement It was because it was on an emergency basis You weren't originally named as a defendant That's correct Right, so Somehow Judge Cass I don't know what happened But she required that you be notified I think pursuant to the rules She determined that we were an indispensable party And required that DDS bring us in Well, DDS Right, okay So I'm not going to go there right now But in the order that she writes There's this big discussion about a settlement agreement When the issue before us today On an interlocutory order Is whether or not we should have Granted Judge Cass Should have granted a preliminary injunction How do we get all of this merit based Well, the reason that happened I think procedurally Was because the defendant Or excuse me, the plaintiff, DDS Was going to dismiss this case With the settlement And so when Judge Cass determined That the settlement was invalid It revived the case But that's my point, is what allowed her to do that? What kind of evidentiary hearing was that? Well, she was provided a copy Of the settlement agreement Okay, but what kind of evidentiary hearing was that? There was no evidence I think it was a matter Of reading the agreement and determining As a matter of law that it was not enforceable And your honor, if I may very quickly One of the terms of the settlement agreement Was that DDS got another crack At this NOFO that they're also Claiming was illegal and invalid Which was the problem that we had And the issue we raised with Judge Cass How can you say that this process is illegal Say that the federal and state laws Have been violated And then the negotiated settlement you seek Is another crack at the same process We think that's an important consideration Did you file a cross-claim Against the state? We did, yes But that is pending Our case against the state Is pending And it was based on the settlement agreement, I presume Well, it was Yes, we had an anticipatory breach Of contract claim against the state We had a tortious Interference with an agreement With DDS And then we filed Correct, correct Okay, but for my interruptions Is there something you wanted to close with? Well, your honor Just that we did take over this Region K on September 9th Which is the week after our brief was filed We've been Plugging along I do think there's an issue of prejudice here What about mootness? Well, that's certainly an issue as well And as I was indicating earlier I believe that the federal 7th Circuit Court of Appeals hit the nail on the head At that point in time It was clear that this was going to be Prejudicial not only to Prairie Lane But also to the providers And I think that was something that the Attorneys argued on behalf of the plaintiffs In that particular case And it was to their credit Justice Scudder mentions in his opinion To their credit, they realized This would be too disruptive To roll back the clock At this particular point in time And we think that that's absolutely true We have a lease We have taken over everything here And it would be disruptive to these folks And they acknowledge that It would be disruptive to the individuals When this was argued in Chicago In front of the 7th Circuit Court of Appeals Thank you Mr. Kennedy Thank you I'd like to Direct the court to take a look at the Smith case Smith v. Department of Natural Resources Where it talks about What a clearly ascertainable right is And in that case The court said that the Plaintiffs had a clearly ascertainable right Because they wanted the state to follow State law At a minimum That's what we have too The second thing That I wanted to mention Is This business of the contract exception To the IAPA The court said here Contracts are clearly and directly involved The applicable case Basically said that the contract Exception is very limited It should be used reluctantly That the notice and comment requirements Of the IAPA are so important That this exception should be Should be very limited That's what the appellate court said And the Supreme Court adopted that rationale That language doesn't appear in their briefs But I want the court to be aware that the court said That that was true And what case do you refer to? Gosh Your Honor I know that you're going to tell me Give me a minute I think it might be Senn Park Nursing Center v. Miller And the appellate court case Is 118 Illap 3rd 504 And it's cited in our brief The appellate version of that The appellate version and the Supreme Court version I have the Supreme Court version The Supreme Court version really Just recaps what the appellate court said The rationale is all in the appellate decision With respect to The Federal case in September 2019 I would say My law firm represents The three ISC agencies In the central district As well as the three individual plaintiffs Their federal claim has to do with The Medicaid freedom of choice Requirement for Consumers to be able to select The provider that they wish That's completely different than our case We don't have that claim It's not in our case It is true that we said Your honor, now that The Contracts have been awarded to Prairieland It's going to be very detrimental To the clients According to those three agencies That we represent there To change the process What we really want is for those Clients to be able to pick The ISC provider that they wish Which is different than the kind Of injunction we asked for At the beginning of the case The court said okay You're not asking for the Injunction anymore We are asking for an injunction In this case we're in the same position now In this case the Prairieland was at the beginning of the case Which is we don't have any clients We don't have a lease We don't have a Mr. Kennedy, what about the settlement agreement That's in this order The settlement agreement is attached to the judge's Decision The settlement agreement was attached to the judge's Were you working with the state to have these The state came to us and said let's settle This case, we said Sold to Merrick, we'll settle this case We agreed to waive attorney's fees They agreed to Four month extension Another no-foe And we begged them to Publish, to do an emergency rule They said they would consider it But there wasn't any agreement But they said they would consider We asked them to do it, we said this is nuts If you don't do it But they didn't And I cannot speak for why they didn't But we had every reason to think that they We hoped that they would And why is that Publish Because if they don't publish the no-foe If they don't go through the notice and comment period The whole thing is void again The counsel is correct The second go around is just as bad as the first The no-foe is illegal Another no-foe is still illegal Until they go through the Notice and comment procedure Of the IAPA Refer it to JCAR Have another notice and comment period And finally promulgate a rule Which they didn't do The state says they were following different regulations I don't know what they're talking about I don't know what regulations they're talking about The Illinois Administrative Procedure Act Is Incorporated into The Grant Appearance and Transparency Act They've got to do it There's no question about it The last thing I would say is that Mootness Is the Smith case Which this court decided I think in 2015 Also talks a little bit about mootness In that case the Court was asked to Enjoin the implementation of a rule Plaintiffs asked I think the attorney was Penny Livingston Asked to First the state Not to implement a rule They did implement the rule And the court said the whole point of the lawsuit Is to Stop the whole process And that's what we're doing here too Thank you Thank you all